[Cite as *Powell v. Owens*, 2022-Ohio-666.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Dietra M. Powell,                                     :

      Petitioner-Appellant,           :               No.  21AP-388
                                          (C.P.C. No. 21DV-862)

v.                                                          :

                                              (ACCELERATED CALENDAR)

Lance G. Owens,                                     :

      Respondent-Appellee.            :

---

D E C I S I O N

Rendered on March 8, 2022

---

**On brief**: *Dietra M. Powell*, pro se. **Argued**: *Dietra M. Powell*.

---

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations

NELSON, J.

{¶ 1}   It certainly may be that Petitioner-Appellant Dietra M. Powell is not entitled to the civil protection order that she seeks against Respondent-Appellee Lance G. Owens. But because the trial court erred both in cutting off entirely the testimony of the one witness Ms. Powell sought to call (other than herself) at the hearing on the matter and in refusing to allow Ms. Powell even to offer the documentary evidence she sought to present, we are not in a position at this stage to assess the merits of the trial court's denial of Ms. Powell's petition.  We will remand the matter to permit evaluation on the basis of a more complete record.

{¶ 2}   We glean from the hearing transcript that Ms. Powell and Mr. Owens had a brief relationship that produced a child, and that Mr. Owens's wife has obtained a civil protection order against Ms. Powell.  Ms. Powell accuses Mr. Owens of "stalking" her, and

claims to be in fear for her physical safety and that of her daughter. Her concerns arise against the backdrop, she says, of threatening texts from a year earlier that allegedly included depictions of guns with high-capacity magazines and a warning that "he was going to shoot up the car if he seen me in a car with another person." *See, e.g.,* July 21, 2021 Tr. at 6 (Ms. Powell's opening statement: "Lance Owens was stalking me" [in May of 2021, the month her petition was filed]), 25 (Ms. Powell's testimony of alleged threats from February of 2020).

{¶ 3} Ms. Powell represented herself at the July 2021 hearing on her May 17, 2021 petition and on another, overlapping petition that is not at issue here; Mr. Owens was represented by counsel. When Ms. Powell summoned a witness to testify to the content of a May 2021 telephone conversation that she represented as having been between herself and Mr. Owens with the third party also on the line, Mr. Owens's lawyer objected that the witness was not in a position to identify his client as the male participant in the conversation: The witness had not known Mr. Owens at the time. *See* Tr. at 13-14; *compare id.* at 11 (Ms. Powell had asked the witness to initiate a call to a number that Ms. Powell said was that of Mr. Owens), 14 (Ms. Powell explains that "she was a witness to a conversation on the phone that we had between me and Lance Owens"). The trial court sustained the objections, noting that the witness "wouldn't be able to testify to even the conversation that you are saying to be able to even know firsthand that it was him." *Id.* at 16 (with Ms. Powell protesting that "[w]e had a very detailed conversation. Lance answered to his name in this conversation").

{¶ 4} Ms. Powell reiterated that her witness "was on the phone on three-way and is my witness that listened to Lance threaten me on this conversation. I am just trying to make a point that I do have a witness to him threatening me in this conversation." *Id.* at 17. Having sustained the objection to questions about the speaker's identity, the trial court then shut down the entire (proposed) testimony about the substance of the call. "Is that [allegedly threatening telephone conversation] the extent of what you had her here to testify for?", the trial court asked Ms. Powell. *Id.* at 18. Advised that it was, the trial court turned to the witness (by Zoom) and said: "Okay. All right. Ma'am, there is no further questions for you at this time. * * * * [Y]ou are free to go." *Id.* at 18.

{¶ 5}  The fact that the witness did not know Mr. Owens (or whoever the male speaker was) does not mean that she was not a direct witness to what was said. *Ms. Powell* (who knew Mr. Owens intimately) later testified that she had called Mr. Owens and that he was the male on the line.  But by that point, the trial court had precluded Ms. Powell's friend from providing her account of *what* was said in the call (as opposed to *who* the participants were) and had abruptly dismissed that witness.  We are left not knowing what the witness would have said about the alleged threats (and whether, for example, the witness would have provided nuance or context that might have reflected a direct and immediate threat of physical harm in a way that Ms. Powell's own account of the conversation, with its references to what might be taken as threats of financial "ruin," failed to convey).  Under these circumstances, we can identify no evidentiary bar to a witness providing a first-hand account of what she heard, while leaving identification of the other speaker to Ms. Powell.

{¶ 6}  Ms. Powell then took the stand herself.  Among other things, she made reference to a DVD showing images of texts received from Mr. Owens's telephone the year before (with Ms. Powell not wanting to lose her own cell phone through placing it into evidence), and to printed copies of text messages also from 2020 and perhaps 2021.  *See id.* at 19-25, 26 ("He sent me text messages in 2020 as well as in 2021").  After testifying that "I am in fear of physical harm from Lance," Ms. Powell referenced the 2020 pictures of the guns as "leading up to the conversation that we had" on May 13, 2021 that "made me file the protection order [petition]" on May 17, 2021.  *Id.* at 25. The trial court, without inquiring whether she had more information to provide, then told Ms. Powell, "All right.  Thank you," and called upon Mr. Owens's lawyer to conduct cross-examination.  *Id.*

{¶ 7}  At some point, the lawyer advised the trial court:  "[T]he point I'm making is that she is saying that she has text messages and she has emails from my client, yet there is a court order saying that the only way she is supposed to communicate with my client is by OFW [a family scheduling platform]."  *Id.* at 39.  After Ms. Powell responded, "Your client communicated with me," the trial court cut her off:  "Right.  Hold on, ma'am," and then declared:  "She didn't submit any evidence of that.  The only text messages she talked about were from 2020."  *Id.*  Ms. Powell tried to explain:  "No, Your Honor.  I have - -," and the trial court told her:  "Hold on.  I'm talking.  But there were no text messages entered into evidence."  *Id.*  Returning to the point in a bit, the trial court said:  "But she didn't present

any evidence of any text messages," and eventually invited Mr. Owens's counsel to resume his cross-examination. *Id.* at 40-41.

{¶ 8} The trial court then ruled that it was too late for Ms. Powell to offer any documents. Ms. Powell: "Hold on, Your Honor. I do have text messages from the defendant." *Id.* at 41. The Court: "No. This is not - - you already - - you had your opportunity for direct. We are just on cross-examination right now." *Id.* As we already have noted, however, the record does not reflect that Ms. Powell ever was afforded the opportunity to say that she had concluded her direct examination of herself. And when Mr. Owens's lawyer told the court that he was done with his cross-examination, the trial court ended Ms. Powell's testimony and the presentation of her case. *Id.* at 48-49 (after Mr. Owens's lawyer said, "I have no further questions," the trial court inquired of Ms. Powell: "Ma'am, you don't have any other witnesses?" Ms. Powell began to respond: "No, ma'am. All I had was the lady that - -." And the trial court then promptly launched into its ruling denying the requested civil protection orders and terminating the temporary civil protection orders that the court had issued ex parte on May 17 and May 27, 2021); *see also* July 22, 2021 Entry Denying Petition for Civil Protection Order.

{¶ 9} On appeal, Ms. Powell advances one assignment of error: "The trial court erred and abused its discretion in dismissing appellant's action." Appellant's Brief at 4. Her argument is that the trial court "should have granted CPO due to evidence Dietra Powell tried to present to [the] trial court[]." *Id.* at 6. After all, she urges, she had "presented the defen[s]e attorney with copies of text messages and video audio as the trial court instructed parties to [do] * * * along with named witnesses. During testimony of appellant, Dietra Powell, stated to the trial court she would like to present the court[] with the text messages and video but she was denied by the trial court Judge." *Id.* She also cited as precedent a case in which a court granted a protective order "due to evidence of text messages, statements, testimony and video presented to the court." *Id.* at 8. Mr. Owens did not file an appellee's brief or otherwise seek to participate here.

{¶ 10} We do not know the extent to which the testimony of Ms. Powell's telephone call witness would have been admissible or probative had the trial court allowed direct examination to go forward in the normal course. We do know the fact that the witness was

not familiar at the time with Mr. Owens does not itself render her incapable of testifying as to the substance of the conversation she heard.

**{¶ 11}** We do not know the extent to which the documents that Ms. Powell sought to identify and present at the hearing would have been admissible or probative had the trial court not short-circuited Ms. Powell's examination of herself or precluded her from further identifying the materials she sought to introduce during her hearing. We do know that Ms. Powell was not given a full opportunity to document her case.

**{¶ 12}** Concluding that the trial court abused its discretion with broadly preclusive evidentiary rulings that were at best premature and impeded both reasoned resolution of the petitions and meaningful review of the result, we sustain Ms. Powell's single assignment of error. We therefore reverse the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, and remand the matter to that court for further proceedings consistent with this decision to determine whether Ms. Powell establishes that Mr. Owens by threat of force placed her in fear of imminent serious physical harm or otherwise engaged in conduct that would trigger a civil protection order.

*Judgment reversed and cause remanded.*

LUPER SCHUSTER, P.J., and JAMISON, J., concur.

NELSON, J., retired, of the Tenth Appellate District, assigned
to active duty under the authority of the Ohio Constitution,
Article IV, Section 6(C).

_____